IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

RECEIVED
CHARLESTON, SC

2015 MAR 30  A 11: 40

| | | |
|---|---|---|
| Jefferey L. Vanderhall, as Assignee of Maurice Wilson and Preiscilla Ford, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 4:14-518 |
| vs. | ) ) ) | |
| State Farm Mutual Automobile Insurance Company, | ) ) ) | **ORDER** |
| Defendant. | ) ) ) ) | |

This matter comes before the Court on Defendant's motion for summary judgment. (Dkt. No. 61). Plaintiff has filed a memorandum in opposition and Defendant has filed a reply. (Dkt. Nos. 75, 76). As explained more fully below, Defendant's motion for summary judgment is granted.

### Legal Standard

A party is entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News and Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). In ruling on a motion for summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to

-1-

be drawn in that party's favor." *Id.*

## Factual Background

On August 21, 2011, Jeffrey Vandenhall, then twenty-three years old and returning from his job at Hornes Motor Lodge in Florence, South Carolina, was struck while riding his bicycle by a truck driven by Maurice Washington. (Dkt. No. 61-2 at 2; 75 at 3). Mr. Vanderhall suffered severe injuries as a result of this collision and was unconscious for approximately a week after the accident. (Dkt. No. 61-5 at 4). On August 23, 2011, Mr. Vanderhall's mother, Teresa Vanderhall, contacted the Hyman Law Firm and a member of the firm came to Mr. Vanderhall's hospital room. Mr. Vanderhall underwent surgery on August 23, 2011, and remained unconscious. (*Id.*, Dkt. No. 61-2 at 3). The law firm took a picture of Mr. Vanderhall in his hospital bed to document "the severity of his injuries." (*Id.*). That same day, August 23, 2011, Teresa Vanderhall executed a retainer agreement with the Hyman Law Firm on behalf of Jeffrey Vanderhall, indicating that she was the "GAL for Jeffrey." (Dkt. No. 61-10). It is uncontested that at the time, Teresa Vanderhall had not been appointed the guardian ad litem for Jeffrey Vanderhall and that he, then being unconscious, was an incapacitated person under South Carolina law. (Dkt. No. 75 at 3).

One day later, on August 24, 2011, William Hatfield, an attorney with the Hyman Law Firm, wrote State Farm Insurance Company regarding Jefferey Vanderhall. Mr. Hatfield indicated that his firm "represents Jefferey L. Vanderhall" and that Mr. Vanderhall had suffered a severe spinal cord injury on August 21, 2011, as a result of being struck by a vehicle operated by Maurice Washington and owned by its insured, Priscilla J. Ford. The picture of Mr. Vanderhall lying in his hospital bed was included with the letter. Mr. Hatfield informed State Farm that he

had made inquiry to a State Farm clerical employee named Veronica and she advised him that there was $25,000 of liability coverage on the vehicle. (Dkt. No. 61-2).

Mr. Hatfield then stated in the August 24, 2011 letter to State Farm that he would give the carrier "one opportunity to settle this claim by tendering . . . liability limits in exchange for a Covenant Not to Execute provided that said tender is made in writing on or before Friday, September 2, 2011, at noon." (*Id.* at 3). Mr. Hatfield further explained that if State Farm refused to tender its limits by the stated deadline, the offer would be withdrawn and the Plaintiff would proceed to sue Maurice Washington for negligence and Priscilla Ford for negligent entrustment. (*Id.*). Mr. Hatfield, in a separate paragraph following the threat of a subsequent lawsuit, stated that should a jury return a verdict in excess of liability insurance limits, "we will seek to collect any judgment from the personal assets of Maurice Washington and Priscilla J. Ford." (*Id.*).

State Farm responded to Mr. Hatfield's August 24, 2011 letter on September 1, 2011, indicating that the carrier was "willing to settle your client's claim for $25,000 in exchange for a covenant not to execute." The letter then stated: "This settlement is inclusive of all economic damages, known and unknown, and any liens, assignments or statutory rights of recovery." (Dkt. No. 61-3). It is uncontested that this proposed language is standard language in settlement agreements and covenants not to execute in South Carolina. (Dkt. No. 53-1 at 2,6; 61-9 at 4-5).

Plaintiff asserted (and the Court concurs) that the additional language proposed constituted a counter offer and a rejection of Plaintiff's August 24, 2011 offer. Thereafter, Plaintiff entered into an agreement with Maurice Washington and Priscilla Ford that provided (1) a confession of judgment of $7 million; and (2) a covenant not execute against Mr. Washington and Ms. Ford beyond the policy limits, which also provided for protection of Washington and

-3-

Ford against any liens or other claims by third parties. (Dkt. No. 1-1 at 11-13, 17-18, 22-24).

Plaintiff, now as an assignee of Washington and Ford, filed suit in the Florence County Court of

Common Pleas asserting claims against State Farm for breach of implied covenant of good faith

and fair dealing, breach of contract, breach of fiduciary duty, judicial estoppel, and attorneys'

fees. (Dkt. No. 1-1 at 3-10). Defendant thereafter timely removed the action to United States

District Court and subsequently moved for summary judgment. (Dkt. No. 1, 61).

Discussion

### A.   The settlement offer of August 24, 2011 was a legal nullity and cannot constitute a lawful basis of a bad faith claim.

Plaintiff's counsel asserts he was retained to represent Jefferey Vanderhall on August 23,

2011, when Plaintiff's mother Teresa Vanderhall executed a retainer agreement on behalf of her

son. It is undisputed that the mother's representation that she was Jefferey Vanderhall's guardian

ad litem was untrue and that no court had authorized her to act on behalf of her then unconscious

and incapacitated son. Plaintiff responds that Mr. Vanderhall was "mildly retarded" and his

mother "always acted as Jefferey's guardian and has always handled his finances." (Dkt. No. 75

at 3). Plaintiff further argues that Ms. Vanderhall essentially was an implied agent of her son and

had the inherent authority to employ counsel and presumably make an offer of settlement of his

legal claims. (*Id.* at 8).

Plaintiff's position ignores the well-settled law of South Carolina regarding court

protection of incapacitated persons. Under South Carolina law, an "incapacitated person"

includes "any person who is impaired by reason of physical illness or disability . . . to the extent

that he lacks sufficient understanding or capacity to make or communicate responsible decisions

-4-

concerning his person or property." S.C. Code Ann. § 62-5-101. An attorney seeking to assist an incapacitated person may undertake "reasonably necessary protective action" on behalf of an incapacitated person that includes "seeking the appointment of a guardian ad litem, conservator or guardian." S.C. App. Court Rule 407, Rule 1.14(b). Thus, a lawsuit brought on behalf of an incapacitated person is normally brought by a court-appointed representative, such as a guardian, guardian ad litem, or conservator, and a court is compelled to appoint a guardian ad litem for an incapacitated person if a lawsuit is brought without a court-appointed representative of the incapacitated person. *See* S.C. Code Ann. §§ 62-5-304, 62-5-424 (17); S.C. R. Civ. P 17(c); *Wilson v. Ball*, 523 S.E. 2d 804, 806 (S.C. App. 1999). Moreover, a binding settlement involving an incapacitated person that is greater than $2,500 can be made only with court approval. S.C. Code Ann. § 62-5-433.

In this matter, the purported retainer agreement was a legal nullity. Ms. Vanderhall executed the agreement on behalf of her son by falsely representing a legal status as a guardian ad litem that she did not have. She also had no implied authority to act on her son's behalf beyond seeking an appointment that would authorize her to act on her incapacitated son's behalf. The right to act on behalf of an incapacitated person in legal proceedings and in the assertion of legal rights and claims is subject to court appointment and supervision, not unilateral action as was undertaken here by the mother and the purported counsel of her incapacitated son. Thus, at the time that Mr. Hatfield wrote State Farm, he had no legally binding retainer agreement with Mr. Vanderhall and had no authority to act on his behalf. Moreover, he certainly did not have the authority to make a binding offer of settlement since such an offer is binding only with court

-5-

approval. [1]

Because the August 24, 2011 letter offering to settle Mr. Vanderhall's claims while he lay unconscious in his hospital bed was written without legal authority, it is simply legal stardust of no effect or consequence.[2] As such, it cannot form the basis of a bad faith claim against the Defendant since no valid offer was actually made. On this basis alone, Defendant is entitled to summary judgment.

**B.** **A reasonable jury could not conclude that State Farm's September 1, 2011 response to Plaintiff counsel's purported offer of August 24, 2011 constituted bad faith, and Defendant is entitled to summary judgment as a matter of law on all claims asserted by Plaintiff.**

Even assuming Plaintiff had made a valid settlement offer to Defendant in the August 24, 2011 letter, the Court finds that State Farm's response cannot be shown to constitute bad faith under South Carolina law. An insurer under South Carolina law acts in bad faith in declining to accept a settlement offer only if there is "no reasonable basis to support the insurer's decision." *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 594 S.E. 2d 455, 464 (S.C. 2004); *Doe v. South Carolina Med. Malpractice Liab. Joint Underwriting Ass'n*, 557 S.E. 2d 670, 674 (S.C. 2001). Thus, the critical question raised by a motion for summary judgment in a bad faith refusal

---

[1] Plaintiff references *Banker Trust of South Carolina v. Bruce*, 323 S.E. 2d 523, 532 (S.C. Ct. App. 1984) for the proposition that an attorney may be retained by an agent. In that matter, a husband was found to have been acting as an agent for his wife, who was a fully competent adult. This case is clearly distinguishable from the situation where, as here, the client is an incapacitated person and the right to act on behalf of such an incapacitated person must be must be pursuant to court order and supervision.

[2] The best evidence that Mr. Hatfield lacked authority to make a binding offer is that had State Farm unqualifiedly accepted the offer and tendered payment, Mr. Vanderhall could have later renounced the settlement since it was not authorized by any court and was made by a lawyer without a valid retainer agreement and his mother without a valid GAL appointment.

to settle case is whether, taking the evidence in a light most favorable to the nonmoving party, there sufficient evidence upon which a reasonable jury could find that the carrier acted without any reasonable basis? In other words, assuming that a valid offer of settlement had been made by Plaintiff to State Farm, was there any reasonable basis for State Farm to propose the insertion of the additional language that the settlement was "inclusive of all economic damages, known and unknown, and any liens, assignments or statutory rights of recovery?"

The original "offer" extended by Plaintiff on August 24, 2011, was ambiguous and did not expressly state whether or not the proposed settlement included all damages, both known and unknown, or whether it included all outstanding liens and other potential claims against the alleged tortfeasors. This standard language was of considerable potential benefit to alleged tortfeasors Washington and Ford because the full extent of the Plaintiff's injuries was not yet known or knowable (he had just suffered his injuries three days earlier and was still unconscious) and the full amount of potential liens and third party claims had not yet been established. Plaintiff's response, that these potential claims were not part of the settlement offer and constituted a counter offer, demonstrates the reasonableness and the necessity of the carrier's inquiry. Had the carrier not made the inquiry, the case could have been settled on the inaccurate assumption that future damages arising from the August 21, 2011 accident and potential third party claims had been addressed in settlement. Moreover, it would have been imminently reasonable for the carrier to refuse to pay policy limits if the Plaintiff would still be free to file a subsequent suit against the carrier's insureds for future damages not known at the time of the settlement. The reasonableness of the carrier's efforts to add the additional language to the settlement terms is aptly demonstrated by the fact that similar language was included for

-7-

Washington's and Ford's benefit at the time they entered into the settlement agreement/ covenant not to execute with Plaintiff. (Dkt. No. 1-1 at 23).

Plaintiff argues vigorously that the carrier acted in bad faith because State Farm may have realized some benefit by the inclusion of the proposed language. Any potential benefit to State Farm from the inclusion of the additional language would have been minimal but the test is not whether the carrier may or may not have benefitted from the proposed counter offer. The critical issue is whether there was a reasonable basis to insert the proposed language in the settlement when considering the best interest of the carrier's insureds. Since there was clearly a potential benefit to the insured, there was a reasonable basis for the Defendant to have proposed the additional language and such action cannot, as a matter of law, constitute the basis of a claim of bad faith.

All of Plaintiff's asserted claims, including breach of covenant of good faith and fair dealing, breach of contract, and breach of fiduciary duty, are grounded on the alleged bad faith of State Farm in proposing the additional language in its letter of September 1, 2011. Since the Court has found that no evidence of bad faith is present on this record, Defendant is entitled to summary judgment as a matter of law on all counts.

## Conclusion

The Court finds that the alleged offer of settlement made by letter of August 24, 2011, was not a legally valid or enforceable offer and, as such, cannot form the basis of a claim of bad faith refusal to settle. Further, the Court finds that even had a valid settlement offer had been made by way of the August 24, 2011 letter, Defendant would nonetheless be entitled to summary judgment because the Defendant's proposal of additional language in the settlement agreement

-8-

would not constitute bad faith under South Carolina law.  Therefore, the Court **GRANTS**

Defendant summary judgment as a matter of law on all counts (Dkt. No. 61) and **DISMISSES**

this action **WITH PREJUDICE.**

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

Charleston, South Carolina
March 30, 2015